IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

SHARON LANGSTON, *et al*

  Plaintiffs,       )
              )
              )
vs.             )
              )  Case no.: 1:12-cv-01112-SOH
SUMMIT HEALTH AND     )
REHABILITATION, *et al*     )
              )
  Defendants.       )

STIPULATION OF SETTLEMENT
AGREEMENT AND RELEASE

  This Stipulation of Settlement Agreement and Release ("Agreement") is entered into between Sharon Langston ("Langston"), Laura Wright (Wright"), Latasha Oliver ("Oliver") and Hazel Taylor ("Taylor") (the "Named Plaintiffs"), represented by Lloyd "Tre" Kitchens of The Brad Hendricks Law Firm, and Summit Health and Rehabilitation, LLC ("Summit"), Progressive Eldercare Services-Bryant, Inc. d/b/a Southern Trace Rehabilitation and Care Center ("Southern Trace"), and Courtyard Rehabilitation and Health Center, LLC ("Courtyard") (collectively the "Defendants") represented by their attorneys James M. Gary and Genoveva Gilbert of Kutak Rock, LLP, subject to the approval of the Court.

  WHEREAS, the Named Plaintiffs, as well as other named plaintiffs which have since been dismissed, sued Defendants, as well as other defendants which have since been dismissed, individually and on behalf of others similarly situated alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et. Seq*., Arkansas Minimum Wage Act ("AMWA"), and sought payment for unpaid hours worked under the theories of promissory estoppel and unjust enrichment; and



WHEREAS, on March 19, 2014, this Court conditionally certified this collective action for claims of unpaid overtime.  Doc. No. 101. On July 7, 2015, this Court decertified the conditionally-certified class and dismissed the claims of all opt-in plaintiffs without prejudice. Doc. No. 248.  The individual claims of the four remaining Named Plaintiffs remain.

WHEREAS, the Defendants deny any wrongdoing, do not admit or concede any actual or potential fault, damage, or liability in connection with any facts or claims that have been brought or could have been brought against it in this Civil Action or otherwise, denies they owe unpaid wages or overtime compensation or any other amounts or benefits to Named Plaintiffs or any other alleged similarly situated persons, deny the claims ever asserted in this action, deny that they violated the FLSA or any other law, rule, or regulation relating to the payment of compensation and maintains that it has at all times properly compensated the Named Plaintiffs and all other persons, and deny they have any liability whatsoever; and

WHEREAS, the Named Plaintiffs and Defendants have exchanged factual disclosures, conducted discovery, produced hundreds of pages of documents, conducted numerous depositions, and such discovery has enabled each party to understand and assess the detail and substance of their respective claims and defenses; and

WHEREAS, a bona fide dispute exists between the Named Plaintiffs and Defendants as to the amount, if any, of damages, including  minimum wages and overtime owing to the Named Plaintiffs; and

WHEREAS, the Parties have engaged in extensive settlement discussions, including exchanging detailed positions on legal and factual issues and other supporting information. These extensive settlement negotiations eventually led the Named Plaintiffs and Defendants to reach a tentative settlement agreement on December 4, 2015, which in turn has been formally reflected in this Agreement and, with the approval of this Court, will fully and

2

finally settle, resolve, and dismiss with prejudice this dispute and the Named Plaintiffs' claims; and

WHEREAS, it is generally accepted that private settlements of FLSA claims may not be enforceable unless approved by the U.S. Department of Labor or the District Court; and

NOW, THEREFORE, in consideration of the mutual promises and agreements set forth herein, subject to the approval of the Court, it is hereby stipulated and agreed by and between the Named Plaintiffs and Defendants that:

## I.   **DEFINITIONS**

The terms set forth below shall have the meanings defined in this Section wherever used in this Agreement and in all of its exhibits, including the Notice.

1.1   "Approval Date" means the date the Court enters the Approval Order.

1.2   "Approval Order" means any Order issued by the Court granting approval of the Settlement.

1.3   The "Civil Action" means the above-captioned action.

1.4   "Named Plaintiffs' Counsel" means The Brad Hendricks Law Firm.

1.5   "Court" means the United States District Court for the Western District of Arkansas, El Dorado Division.

1.6   "Covered Period" means the period beginning three years prior to December 5, 2012, the date the Named Plaintiffs commenced this Civil Action by filing a Complaint herein, and continuing through and ending on the Approval Date.

1.7   "Defense Counsel" means Kutak Rock, LLP.

1.8   "Net Settlement Amount" means the total gross amount of $20,000.00, inclusive of all attorney's fees and costs.  Under no circumstances shall Defendants' maximum total settlement liability exceed the gross sum of $20,000.00.

1.9   "Payment Deadline" means the date that falls fifteen (15) business days after the Court approves this Settlement.

3

4820-5961-7068.1

1.10    The "Parties" means the Named Plaintiffs and Defendants.

1.11    The "Plan of Allocation" means the apportionment of the Net Settlement Amount, the methodology of which is described in Section 4.1.

1.12    (a)  "Released Claims" means any and all wage and hour, wage payment, commission payment, or other related claims of whatever nature that a Named Plaintiff may have, directly or indirectly, against any of the Defendants, including the Released Parties including without limitation the claims asserted or that could have or should have been asserted in this Civil Action, whether known or unknown, unforeseen, unanticipated, unsuspected, or latent as a result of actions or omissions through and including the Approval Date, whether under federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law, including, but not limited to, the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.*, as amended, including, without limitation, any and all claims, causes of action, rights, grievances, liabilities, and damages for unpaid overtime, payment of compensation, payment of commission, payment of bonus, payment of liquidated damages, unpaid wages, deductions, minimum wages, premium pay, method of payment calculation, failure to maintain records and provide information,  interest, litigation costs, attorney's fees, costs, injunctive or declaratory relief, or penalties related to overtime, missed meal periods, missed rest breaks, breach of contract, restitution, promissory estoppel, unjust enrichment, or quantum meruit claims related to wage claims, related claims, the prompt pay laws of any state, and other alleged wage and hour violations, any claims that monies received from the Settlement are compensation or benefits eligible for retirement or other employee benefits plans of the Released Parties or related to the Employment Retirement Income Security Act (ERISA), and any other equitable or legal relief sought or allegedly due and owing by virtue of this Civil Action or the foregoing claims or causes of action.  The term "Released Claims" shall also include all rights and claims, without limitation, any and all claims, causes of action, rights, liabilities, and damages

4

under any other federal, state, or local law, whether arising from statute, executive order, rule, regulation, code, common law, or other source, including without limitation all actions sounding in tort, contract, and equity, and all claims or causes of action based on employment, termination of employment and/or any interaction with the Released Parties and the Defendants that occurred prior to the Approval Date, including without limitation, discharge of any and all claims pertaining to a violation of, wrongful discharge, employment discrimination, failure to accommodate, whistleblower, harassment or retaliation, leave entitlement, including claims under Title VII of the Civil Rights Act, 42 U.S.C. Section 1981, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Americans With Disabilities Act, the Family and Medical Leave Act, breach of contract (express or implied), wrongful discharge, discrimination, retaliation, harassment, orientation, whistleblower, interference with contract, intentional or negligent infliction of emotional distress, defamation, promissory estoppel, detrimental reliance, negligence, or any other reason established by the common law or by federal, state or local laws, cases, statutes or regulations. Pursuant to the ADEA, the Named Plaintiffs enter into this Agreement knowingly and voluntarily of their own free will and with the intent to be bound hereby, they have carefully read this Agreement, they have had ample time to consider and study the terms and provisions of this Agreement before signing same, they fully understand the provisions and effect of this Agreement, they have not been forced, induced or coerced into entering into this Agreement, they understand they have the right at their cost to consult with an attorney of their own choosing prior to signing this Agreement. Named Plaintiffs also acknowledge that this Agreement is written in a manner calculated to be understood by them, that they do not waive any rights or claims under the ADEA that may arise after the date of this Approval Date, and they are waiving rights and claims in exchange for consideration in addition to anything of value to which they are already entitled.  Under the ADEA, Named Plaintiffs expressly acknowledge that that have been advised that

5

they may take up to twenty-one (21) days in which to review the terms of this Agreement as it relates to their waiver and release of age-based claims under the ADEA and Older Workers Benefit Protection Act (or applicable age-based state law).  Named Plaintiffs also understand they do not have to wait twenty-one (21) days to accept and sign the Agreement as it relates to their waiver and release of age-based claims under the ADEA and Older Workers Benefit Protection Act (or applicable state law), and if they execute this Agreement before the twenty-one (21) days have passed, the seven (7) day revocation period described hereafter below will begin upon signing.  Named Plaintiffs also understand that following their signing of this Agreement, they may revoke their acceptance of this Agreement as it solely relates to a release and waiver of age-based claims under the ADEA and Older Workers Benefit Protection Act (or applicable age-based state law), provided revocation is made within seven (7) calendar days of the date the Named Plaintiff signed this Agreement.

(b)      Except for Oliver, Named Plaintiffs agree not to apply for or seek employment or re-employment with the Defendants or the Released Parties at any time following their signature on this Agreement.  In the event that any Named Plaintiff does apply for employment in violation of this provision, each agrees that he has no right or expectation to be hired or employed and that Defendants or any Released Party has a legitimate, nondiscriminatory, non-retaliatory, and contractual reason to refuse his hire or, in the event he is mistakenly hired in contradiction of this provision, to terminate his employment after realizing such error and Named Plaintiffs each acknowledge that, in doing so, Defendants and the Released Parties are not discriminating or retaliating against him but are asserting their contractual rights hereunder.

1.13   "Released Parties" means the Defendants Summit Health and Rehabilitation, LLC ("Summit"), Progressive Eldercare Services-Bryant, Inc. d/b/a Southern Trace Rehabilitation and Care Center ("Southern Trace"), and Courtyard Rehabilitation and Health Center, LLC ("Courtyard"), all persons or entities named as a

4820-5961-7068.1

defendant at any time, or that could have or should have been named as a defendant, in the Civil Action, all employers or purported employers of the Named Plaintiffs, and their predecessors, successors, and present and former affiliates, parents, subsidiaries, common or related entities, insurers, related entities, officers, directors, owners, partners, managers, consultants, shareholders, board members, third party contractors, attorneys, agents, representatives, employees, and assigns, both current and former, including, without limitation, any investors, trusts, or other similar or affiliated entities and all persons acting by, through, under, or in concert with any of them, including any party that was or could have been named as a defendant in this action.

  1.14 "Settlement" means this Stipulation of Settlement Agreement and Release and the terms outlined herein, including any and all exhibits or attachments hereto.

## II. <u>RECITALS AND AFFIRMATIONS</u>

  2.1 Named Plaintiffs, as well as other named plaintiffs which have since been dismissed, sued Defendants, as well as other defendants which have since been dismissed, individually and on behalf of others similarly situated alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et. Seq*., Arkansas Minimum Wage Act ("AMWA"), and sought payment for unpaid hours worked under the theories of promissory estoppel and unjust enrichment. The Named Plaintiffs allege that Defendants did not pay certain wages for every hour worked and that Defendants did not pay them for every hour worked over forty (40) in a workweek. Defendants deny any and all liability to the Named Plaintiffs or to any similarly situated individuals or any other person, and denies that they have any liability and further states that they have paid all persons or employees as required by the law for all hours worked, and at all times has acted in accordance with applicable federal, state, and local law.

  2.2 Named Plaintffs' Counsel conducted a thorough investigation into the facts of this Civil Action, including the discovery of documents concerning employment

7

policies and procedures related to the allegations of the Named Plaintiffs, a review of the human resource and personnel files, and the review of and calculations regarding payroll data. Named Plaintiffs' Counsel diligently pursued an investigation of the claims against Defendants by, among other things, interviewing witnesses, responding to discovery requests, and producing persons for depositions.  Based on their investigation and evaluation, the Named Plaintiffs' Counsel is of the opinion that the terms set forth in this Settlement are fair, reasonable, and adequate and in the best interest of the Named Plaintiffs' in light of all known facts and circumstances, including the risk presented by the defenses asserted by Defendants and the delays associated with the litigation process and an appeal.

2.3     It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims arising from or related to the Civil Action and which exist between them.

2.4     It is the intention of the Parties that this Agreement shall constitute a full and complete settlement and release by the Named Plaintiffs of the Released Claims against the Defendants and the Released Parties.

2.5     Defendants deny any liability or wrongdoing of any kind associated with the claims alleged in the Civil Action or any violation of any law or regulation.

2.6     This Agreement is a compromise and shall not be construed as an admission of liability at any time or for any purpose, under any circumstances, by the Parties or the Released Parties.  The Parties further acknowledge and agree that neither this Agreement nor the Settlement shall be used to suggest an admission of liability in any dispute that any of the Parties may have now or in the future with respect to any person or entity.  Neither this Agreement, anything in it, nor any part of the negotiations that occurred in connection with the creation of this Settlement, shall constitute evidence with respect to any issue or dispute in any lawsuit, legal proceeding, or administrative

8

proceeding, except for legal proceedings concerning the enforcement or interpretation of this Agreement.

III.   **ATTORNEYS' FEES, LITIGATION COSTS, AND SETTLEMENT ADMINISTRATION COSTS**

3.1    Subject to Court approval, the Named Plaintiffs' Counsel will receive the total gross amount of $14,548.12, as attorney's fees and costs, to be taken from the Net Settlement Amount.  Sums paid to the Named Plaintiffs' Counsel shall be deducted from the Net Settlement Amount, and not in addition to the amounts in the Net Settlement Amount.  Named Plaintiffs' Counsel shall provide an executed IRS Form W-9 and any other forms required to process payment on or after the Approval Date.  Defendants shall issue an IRS Form 1099 for the attorneys' fees and expenses payment, and any and all taxes relating to the payments described in this paragraph shall be the sole responsibility of Named Plaintiffs' Counsel.

3.2    Except for the fees, costs, and other expenses set forth in this Section, the Parties shall bear responsibility for their own fees, costs, and expenses incurred by them or arising out of the Civil Action and will not seek reimbursement thereof from any Party to this Agreement or the Released Parties.

IV.   **ALLOCATION OF THE NET SETTLEMENT AMOUNT**

4.1    Subject to Court approval, and the other conditions of this Agreement, each Named Plaintiff will be paid:

(a)    Provided Langston, age 46, does not timely revoke as provided in Section 1.12 (a), she will receive: (i) a check in the total gross amount of $389.15, less applicable withholdings and    deductions, designated as wages for tax purposes and she will receive an IRS Form W-2 for this portion of the settlement payment and (ii) a check in the total gross amount of $389.16 and such payment will be designated as liquidated

9

damages for tax purposes and she will receive an IRS Form 1099 for this portion of the settlement payment;

(b)     Provided Taylor, age 43, does not timely revoke as provided in Section 1.12 (a), she will receive: (i) a check in the total gross amount of $69.12, less applicable withholdings and deductions, designated as wages for tax purposes and she will receive an IRS Form W-2 for this portion of the settlement payment and (ii) a check in the total gross amount of $69.13 and such payment will be designated as liquidated damages for tax purposes and she will receive an IRS Form 1099 for this portion of the settlement payment;

(c)     Provided Wright, age 59, does not timely revoke as provided in Section 1.12 (a), she will receive: (i) a check in the total gross amount of $2,105.69, less applicable withholdings and deductions, designated as wages for tax purposes and she will receive an IRS Form W-2 for this portion of the settlement payment and (ii) a check in the total gross amount of $2,105.69 and such payment will be designated as liquidated damages for tax purposes and she will receive an IRS Form 1099 for this portion of the settlement payment; and

(d)     Oliver, who is under age 40, will receive: (i) a check in the total gross amount of $161.97, less applicable withholdings and deductions, designated as wages for tax purposes and she will receive an IRS Form W-2 for this portion of the settlement payment and (ii) a check in the total gross amount of $161.97 and such payment will be designated as liquidated damages for tax purposes and she will receive an IRS Form 1099 for this portion of the settlement payment.

(e)     Defendants make no representations or warranties regarding the tax consequences of the settlement payments under this Agreement to the Named Plaintiffs,

10

and assumes no liability for Named Plaintiffs' tax obligations on same.  Each Named Plaintiff, accepting payment pursuant to this Agreement agrees that she is solely responsible for her tax liability under federal, state, or local tax laws arising from the payments described above.  As a condition to receiving payment, each Named Plaintiff shall provide to Defendants necessary taxpayer information.

V.  **RELEASES AND COVENANT NOT TO SUE**

5.1  By operation of this Agreement, the Named Plaintiffs, individually and on behalf of their respective heirs, beneficiaries, designees, legatees, executors, administrators, successors-in-interest, and assigns hereby irrevocably and unconditionally forever and fully waive, discharge, and release from, and covenant not to sue Defendants and the Released Parties, for any and all of the Released Claims, whether known or unknown.

5.2  This release is intended to, and shall be effective as, a complete release and bar to all Released Claims by the Named Plaintiffs, including claims that any releasing person knows about or suspects, as well as those that the releasing person does not know about or does not suspect.  A releasing person shall be deemed to know the significance of this release and waiver of Released Claims as to unknown or unsuspected claims and his waiver of any protection against a release of unknown or unsuspected claims.

5.3  The Named Plaintiffs, covenant and agree that (a) they will not sue or bring any action or cause of action, including by way of third-party claim, cross-claim, or counterclaim, against the Defendant or any Released Party in respect of any of the Released Claims; (b) they will not initiate or participate in bringing or pursuing any class or collective action against the Defendant or any of the Released Parties in respect of any of the Released Claims; (c) if involuntarily included in any such class action encompassing Released Claims, they will opt out of the lawsuit if possible; and (d) they

11

will not voluntarily and knowingly assist any third party in initiating or pursuing a class or collective action suit in respect of the Released Claims.

5.4    The Release contained in this Agreement may be raised as a complete defense to bar any action, claim, or demand brought in contravention of this Agreement. In the event any such claim, action, or demand is brought or pursued in violation of this Release, any party seeking to rely on same shall provide written notice to the person bringing or pursuing such barred action, claim, or demand indicating the party asserting the Release believes the action, claim, or demand is barred by the Release.  The person bringing or pursuing such barred action, claim, or demand, shall have a reasonable opportunity to cure.  If the person bringing or pursuing such barred action, claim, or demand fails to cure, it shall indemnify and hold harmless the party against whom such action, claim, or demand is brought from and against any and all judgments, costs, and expenses arising therefrom (including but not limited to reasonable attorneys' fees and disbursements of counsel and other professionals and court costs incurred therewith), it being the intent that that the substantially prevailing party shall be entitled to indemnification from the substantially non-prevailing party involved in any such action.

5.5    Nothing in this Agreement shall bar any Party from bringing an action to enforce this Agreement in accordance with its terms.

VI.    **NON-ADMISSION**

6.1    Defendants expressly deny any and all wrongdoing associated with the claims in this case and makes no admission of liability.  Defendants deny all allegations and averments made or that could have been made or should have been made in this Civil Action and further denies any liability to the Named Plaintiffs, or any other person or entity.  Defendants maintain that they have complied with applicable federal, state, and local laws at all times.  It is expressly understood and agreed by the Parties that this Agreement is being entered into by Defendants solely for the purpose of avoiding the cost and disruption of ongoing litigation and any claims asserted in this Civil Action.  Nothing

12

in this Agreement, the settlement proposals exchanged by the Parties, or any motions filed or orders entered pursuant to this Agreement, may be construed or deemed as an admission by Defendants of any liability, culpability, negligence, or wrongdoing and this Agreement, including its provisions, its execution, and implementation, including any motions filed or orders entered, shall not in any respect be construed as offered or deemed admissible as evidence, or referred to in any arbitration or legal proceeding for any purpose, except in an action or proceeding to approve, interpret, or enforce this Agreement.  Defendants consider it desirable this Civil Action and the claims alleged therein be settled upon the terms and conditions set forth in this Agreement in order to avoid further expense and burdensome, protracted litigation and to fully and finally put to rest the Released Claims.

6.2     In the event that the Court does not approve this Agreement, the parties agree that this Agreement is not meant to be, and will not be, construed as an admission that Defendants are liable in any manner.

6.3     For the sake of clarity, the protections and rights of this section VI shall also apply to and inure to the benefit of the Released Parties.

VII.   **DUTIES OF THE PARTIES TO OBTAIN COURT APPROVAL**

7.1     In connection with the approval by the Court of the Settlement, and consistent with any direction provided by the Court, Named Plaintiff Counsel and Defense Counsel will submit a proposed Order Granting Approval of Settlement, substantially in the form of Exhibit A, attached hereto, for the Court's review and consideration.  Such proposed Order will:

(a)     Grant final approval to the Agreement, adjudging the terms thereof to be fair, reasonable and adequate, and directing consummation of its terms and provisions; and

(b)    Dismiss the Civil Action on the merits and with prejudice and permanently bar the Named Plaintiffs from prosecuting against any Released Parties any of the Released Claims; and

(c)    Retain jurisdiction to enforce the terms of the Agreement.

**VIII.    PARTIES' AUTHORITY**

8.1    The signatories hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions hereof.

8.2    All of the Parties acknowledge that they have been represented by competent, experienced counsel throughout all negotiations that preceded the execution of this Agreement, and this Agreement is made with the consent and advice of Named Plaintiff Counsel and Defense Counsel, who have jointly prepared this Agreement.

**IX.    MUTUAL FULL COOPERATION**

9.1    The Parties agree to use their best efforts and to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents, and to take such other action as may reasonably be necessary to implement and effectuate the terms of this Agreement.

**X.    SETTLEMENT OF DISPUTES**

10.1    All disputes relating to this Agreement and its implementation shall be within the continuing jurisdiction of the Court over the terms and conditions of this Agreement, until all payments and obligations contemplated by the Agreement have been fully carried out.

**XI.    AMENDMENTS/MODIFICATION**

11.1    No waiver, modification, or amendment of the terms of this Agreement and/or its attachments shall be valid or binding unless in writing, signed by and on behalf of all of the parties, and then only to the extent set forth in such written waivers, modifications, or amendments, and approved by the Court.

4820-5961-7068.1

## XII.   ENTIRE AGREEMENT

12.1   This Agreement and its attachments constitute the entire agreement between the Parties concerning the subject matter hereof.  No extrinsic oral or written representations or terms shall modify, vary, or contradict the terms of this Agreement. In the event of any conflict between this Agreement and any other Settlement-related document, the Parties intend that this Agreement shall be controlling.

## XIII.   DISPUTE RESOLUTION

13.1   Any dispute, challenge, question, or the like relating to this Agreement shall be heard only by the Court, with those issues being reserved to the construction of this Agreement only.

## XIV.   COUNTERPARTS

14.1   This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties.

## XV.   NO THIRD-PARTY BENEFICIARIES

15.1   This Agreement shall not be construed to create rights in, or to grant remedies to, or to delegate any duty, obligation, or undertaking established herein to any third party as a beneficiary of this Agreement.

## XVI.   BINDING AGREEMENT

16.1   This Agreement shall be binding upon, and inure to the benefit of, the Parties and their affiliates, agents, employees, beneficiaries, heirs, executors, administrators, successors, and assigns.

## XVII.   VOIDING THE AGREEMENT

17.1   In the event this Agreement, or any amended version agreed upon by the Parties, does not obtain judicial approval for any reason, this Agreement shall be null and void in its entirety, unless expressly agreed in writing by all Parties.

4820-5961-7068.1

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date indicated below:

Named Plaintiffs:

Dated: 12/14/15 , 2015     By: Sharon Langston
                                                   Sharon Langston

Dated:_____, 2015     By:_____
                                                   Hazel Taylor

Dated:_____, 2015     By:_____
                                                   Latasha Oliver

Dated:_____, 2015     By:_____
                                                   Laura Wright

4820-5961-7068 1

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date indicated below:

Named Plaintiffs:

Dated:_____, 2015      By:_____
                                      Sharon Langston

Dated: _December 21_, 2015        By:_Hazel Taylor_____
                                      Hazel Taylor

Dated:_____, 2015      By:_____
                                      Latasha Oliver

Dated:_____, 2015      By:_____
                                      Laura Wright

16

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date indicated below:

Named Plaintiffs:

Dated:_____, 2015     By:_____
                                      Sharon Langston

Dated:_____, 2015     By:_____
                                      Hazel Taylor

Dated: 12/17/2015, 2015     By:_____
                                      Latasha Oliver

Dated:_____, 2015     By:_____
                                      Laura Wright

16

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date indicated below:

Named Plaintiffs:

Dated:_____, 2015          By:_____
                                          Sharon Langston

Dated:_____, 2015          By:_____
                                          Hazel Taylor

Dated:_____, 2015          By:_____
                                          Latasha Oliver

Dated: _12 — 12_____, 2015          By: _Laura Wright_____
                                          Laura Wright

16

Defendants:

Dated: _12/30/15____, 2015   By: Courtyard Rehabilitation and Health Center, LLC

                                      Signature: _David Lewis_____
                                        Name Printed: _David Lewis_____
                                        Title: _Administrator_____

Dated: _____, 2015   By: Summit Health and Rehabilitation, LLC

                                        Signature: _____
                                        Name Printed:_____
                                        Title: _____

Dated: _____, 2015   By: Progressive Eldercare Services-Bryant, Inc. d/b/a
                                       Southern Trace Rehabilitation and Care Center

                                        Signature:_____
                                        Name Printed: _____
                                        Title: _____

Defendants:

Dated: _____, 2015   By: Courtyard Rehabilitation and Health Center, LLC

                                           Signature:_____
                                           Name Printed: _____
                                           Title:_____

Dated: _December 31_, 2015   By: Summit Health and Rehabilitation, LLC

                                           Signature: _Jeanette Lane_
                                           Name Printed: _Jeanette Lane_
                                           Title: _Administrator_

Dated: _____, 2015   By: Progressive Eldercare Services-Bryant, Inc. d/b/a
                                           Southern Trace Rehabilitation and Care Center

                                           Signature:_____
                                           Name Printed: _____
                                           Title: _____

17

Defendants:

Dated: _____, 2015   By: Courtyard Rehabilitation and Health Center, LLC

                                  Signature:_____
                                  Name Printed: _____
                                  Title:_____

Dated: _____, 2015   By: Summit Health and Rehabilitation, LLC

                                  Signature: _____
                                  Name Printed:_____
                                  Title: _____

Dated: 12·30·15 _____, 2015   By: Progressive Eldercare Services-Bryant, Inc. d/b/a
                                  Southern Trace Rehabilitation and Care Center

                                  Signature: _Nancy Brown_____
                                  Name Printed: _Nancy J Brown_____
                                  Title: _Executive   Director_____

17